WILLIAM B. GREENOUGH, Attorney General, *vs.* INDUSTRIAL TRUST COMPANY.

MARCH 6, 1912. ·

PRESENT: Dubois, C. J., Johnson, Parkhurst and Sweetland, JJ.

(1)   *Municipal Corporations.   Marking Street Lines.*
Pub. Laws, cap. 1406, provides that the city engineer of the city of Providence shall within five days after receiving notice of an intention to build within ten feet of any street, proceed to mark out and define the street line adjacent to the proposed structure if such line can be accurately determined, and shall also mark the grade of the street if such grade has been duly established or defined and shall make such return of said marking of line and grade to the inspector of buildings:—
*Held*, that the act referred to the determination of a street line that had been already established.
*Held*, further, that the erroneous location of such line by the city engineer was not binding either upon the abutting owner or the public.

INFORMATION IN EQUITY.   Heard on certification from Superior Court.

DUBOIS, C. J.   This is an information in equity brought in the Superior Court by the Attorney General, in behalf of the State, to abate a public nuisance, erected and maintained by the defendant, to wit:   a portico, upon and over a portion of the sidewalk on the northerly side of a public highway called Westminster street, and between Market Square and Exchange street, in the city of Providence, whereon the Benjamin D. Weeden estate, so-called, abuts. The defendant filed a plea to the information to the effect that no part of its building or the portico thereof complained of is within the limits of Westminster street, as defined by the city engineer of the city of Providence.   Upon consideration of the merits of said plea the Superior Court ordered that the following question be certified to this court for determination under the provisions of Gen. Laws, cap. 298, § 5, namely:   "Whether or not, in a suit in equity commenced by the Attorney General by Information setting out the existence of a public street between Market Square and Exchange street, called Westminster street, which street is improved by a sidewalk on the northerly side thereof, which sidewalk extends to the front occupation line of each of the buildings abutting on said street, including the building on the Benjamin D. Weeden estate, so called, and measures about thirteen and one quarter feet in width; that all the buildings are ancient buildings, built on practically a straight front line abutting immediately on said sidewalk, that the sidewalk is of no greater width than is reasonably required for travel, and that the owners of the buildings dedicated to the public for travel said sidewalk, that the public continually used said sidewalk to the full width under a claim of right from time immemorial; that in 1879 there was an attempted layout of said street making the sidewalk nine and one-half feet in width and leaving a space of about four feet in front of said buildings; that said layout was not legal as to said Benjamin D. Weeden estate and has never been observed and that since said attempted layout said space of four feet has been left open to travel by the abut-

ting owners and improved by them as a sidewalk and that the public has continually since said attempted layout used the same as a matter of right, that the Industrial Trust Company acquired said Benjamin D. Weeden estate and proceeded to erect a building on said estate and also proceeded to erect a portico in front of said building over said sidewalk and said space of four feet for a distance of about four feet in width and twenty six feet in length, that said portico permanently and seriously obstructs said sidewalk, and praying that it may be decreed that said strip of land upon which the respondent has placed structural materials is subject to the public right and easement of travel and a highway easement in and over the same as part of a street, and praying further that the respondent may be perpetually enjoined from further building or constructing said portico or any part thereof on or over said strip of land, from further continuing or permitting such portico to remain thereon, a sufficient defence is set up by a plea wherein it is alleged that the respondent, intending to erect a building and permanent structure within ten feet of a certain street in the city of Providence in the Information mentioned and which it is claimed in the Information is obstructed by a portion of a portico being erected by the respondent as a part of a building in process of construction, on June 25, 1909, being more than six days before proceeding to build and before taking out a permit for the same, filed in the office of the City Engineer of said Providence a written notice of such intention in accordance with the provisions of Chapter 1406 of the Public Laws, passed May 17, 1895, entitled 'An Act in Addition to Chapter 688 of the Public Laws, passed at the January Session, A. D. 1878,' entitled 'An Act in Relation to Buildings in the City of Providence and for other Purposes,' and that the City Engineer did, within the time prescribed by said statute, proceed to mark out and define the street line of said street adjacent to the proposed structure and that no part of the new building or of the portion in the Information mentioned is within or obstructs said

street as said street is bounded by the line marked out and defined by said City Engineer, and that every portion of said building and of said portico is wholly without said street and the line thus marked."

The provisions of said Pub. Laws, cap. 1406, pertinent to the present consideration read as follows:

"Section 1. Every person intending to erect any building or other permanent structure within ten feet of any street or highway in said city, whether said street or highway is duly received by said city or otherwise dedicated to public use, or to alter the location of the external wall of any existing building which wall is in like proximity to such street or highway, shall, six days before proceeding to build or to alter the location of such external wall and before taking out a permit for the same, file in the office of the city engineer a written notice of such intention, stating the use and location of the structure as proposed.

"Sec. 2. The city engineer shall, within five days after receiving the notice specified in the foregoing section, proceed to mark out and define the street line adjacent to the proposed structure, if such line can be accurately determined. He shall also, within the said time, mark the grade of the adjacent street if such grade has been duly established or defined, and shall make such return of said marking of line and grade to the inspector of buildings as shall be necessary for said inspector's information.

"Sec. 3. The inspector of buildings shall not issue any permit for building until he is satisfied that the applicant has complied with the provisions of the foregoing section."

The respondent claims that the structure alleged to be an encroachment upon Westminster street, was lawfully erected because erected outside of the street as defined by the city engineer in the city of Providence, under statutory authority; that such definition of the street line was determinative of the respective rights of the public and of the abutting owner in that portion of the alleged highway which lay outside of the street as that bounded.

The respondent contends that its claim, as to the effect given by the statute to the action of the city engineer, may be supported upon either of four theories, viz.: (1) that the action was judicial; (2) that the action was a discontinuance of so much of the highway as lay without the defined line; (3) that the action is analogous to the establishment of a harbor line; (4) that the action of the engineer followed by the expenditures by the respondent created an estoppel.

The question is, in brief, whether or not the act of the city engineer of the city of Providence, in pursuance of the statutes cited in the question certified, is binding upon the abutting owner and upon the public to the extent that the location of the street line as marked out and defined by him, is final and not subject to collateral impeachment.

The jurisdiction of the city engineer in the premises is derived from Pub. Laws, cap. 1406, § 2, aforesaid. If the street line adjacent to the proposed structure can be accurately determined he may do certain prescribed acts. If such line cannot be accurately determined he can do nothing. The determination therein referred to does not contemplate the establishment of a street line by the city engineer, for manifestly the chapter is not intended to alter the laws relating to the laying out and making of highways or to the alteration, discontinuance or abandonment of the same, for there is nothing in the title or the text to indicate any intention on the part of the legislature to make such a radical departure from the well known method of procedure in such cases made and provided. It does, however, refer to the determination of a street line that has been already established. The word "determined" in the section is evidently used in the sense of "ascertained" or "located." If it was intended that a street line should thereby be established, the words chosen are singularly inappropriate to accomplish such a purpose, as can easily be demonstrated by substituting the word "established" for "determined," in the sentence so that it will read: "if such line can be accurately

established." It is hardly likely that a civil engineer, such as the city of Providence would be likely to employ as its city engineer, would find it impossible to accurately establish any street line in the city. If the city engineer was unable to accurately ascertain or find the location of the northerly street line of Westminster street, between Market Square and Exchange street, whereon the Benjamin D. Weeden estate, so-called, abuts, then he had no power to proceed in the premises, and all that has been done by him is nugatory. If he was able to determine where such street line was, then his duty was to "proceed to mark out and define the street line adjacent to the proposed structure." That is, he should make such visible markings of the street line as should serve as a warning to the person intending to build, and to his architect, builders and workmen to keep off the street and upon the premises of the builder. Furthermore, he has to mark the grade of the street, if the grade has been duly established or defined; and, in passing, it is to be noted that he is not to *establish* a grade in any event, which furnishes an additional argument against his power to establish the street line, for if the legislature had been willing to confer upon him the power to establish the street line, they might also well have conferred upon him the power to establish a grade, that being a matter peculiarly within the province of an expert engineer. As an additional and final argument against the contention of the respondent, the italicized portion of the language of the section concerning the report of his doings that he is to make to the inspector of buildings for the information of said inspector is especially noteworthy: "and shall make such return of said *marking of line and grade* to the inspector of buildings." . . . In a case where no grade had been established his return would consist "of said *marking of line.*" He is to *mark* not *make* the line. This is the definition placed by the General Assembly upon the language used concerning the duties imposed upon the city engineer by the provisions of Section 2 aforesaid. In case the street line had been established, but the

street grade had not, he is to mark the street line.    In case the street line and grade had been established, he is to mark both.    In case the street line had not been established, or could not be accurately determined, he is to mark neither. But if he does any marking he must do it correctly or his marking will have no effect.    No one will be bound by his errors, if he makes any.    He cannot change the line of Westminster street by his erroneous marking any more than he can change the latitude and longitude of the Benjamin D. Weeden estate, so-called, which abuts on said street, by miscalculation of its geographical position.    For these reasons the defendant's plea is insufficient because it does not set forth that every portion of the building and portico is without the limits of Westminster street, but makes the qualified statement "that no part of the new building or of the portion in the information mentioned is within or obstructs said street *as said street is bounded by the line marked out and defined by said city engineer, and that every portion of said building and of said portico is wholly without said street and the line thus marked.*"

Having thus decided the question certified to us, the papers in the case, with our decision certified thereon, are remitted to the Superior Court for further proceedings.

*Elmer S. Chase, Albert A. Baker,* for complainant.

*C. M. Van Slyck, Frederick A. Jones,* for respondent.